**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**



Filed & Entered
On Docket
May 13, 2008

_____
In re:

**James and Debra Berry**                                    Chapter 13 Case
         **Debtor.**                                         #08-10264
_____

### ORDER
### ADDRESSING VEHICLE VALUATION DISPUTE AND
### DIRECTING DEBTORS TO PRODUCE EVIDENCE AS TO THE CONDITION OF THE VEHICLE

On March 27, 208 the Debtors filed a petition seeking relief under chapter 13 and a chapter 13 plan. (the "Plan", doc. # 5).   The confirmation hearing was set for April 24, 2008.  VW Credit, Inc. ("VW") appeared at the confirmation hearing, and interposed an oral objection to the Debtors' valuation of its collateral. The Debtors assert that the vehicle in question, a 2004 Volkswagen Passat, (the "Collateral") has a value of $10,000 and propose in their plan to pay this amount with 6.5% interest (applying the Till interest rate, even though the contract calls for interest at 0%).  VW asserts that this value is incorrect in that it values the wrong model of the car, provides the value a private seller rather than a retail merchant would sell it for, and does not refer to specific conditions of the vehicle. It seeks to have the collateral valued at $13,600 and to have its claim paid with an interest rate of 6.5%.

The Debtors' objected to VW's assertion of an objection to confirmation on both procedural and substantive grounds.  Procedurally, the Debtors argue that the VW objection is untimely under Vermont Local Bankruptcy Rules ("the Local Rules").  The Court has reviewed the Local Rules and finds that the Debtors are correct that the VW objection was not timely under Vt. LBR 3015-2(d), which sets the time frame for filing documents in connection with confirmation hearings and allows objections to be interposed at the confirmation hearing under very circumscribed circumstances. It provides:

> **(d) Filings Considered in Connection with the Confirmation Hearing.** Unless the information necessary to file a document was not available prior to the § 341 meeting of creditors, no document filed later than two (2) business days before the confirmation hearing will be considered by the Court in connection with the confirmation hearing; such a document shall be considered a tardy filing and the confirmation hearing shall proceed as if that document had not been filed. Thus, for example, the filing of objections or amended plans as late as the day of the confirmation hearing, where the relevant information for such documents was first disclosed at or after the § 341 meeting of creditors on the day of the confirmation hearing, will be considered by the Court (even though filed less than two (2) business days before the confirmation hearing). Conversely, **where other documents that could have been filed at least two (2) business days before the confirmation hearing (because their filings were not dependent on the § 341 meeting of creditors), were not filed in a timely fashion, the Court will not consider them in connection with the confirmation hearing**. . . .

1

Vt. LBR 3015-2(d) (emphasis added). Accordingly, if that rule were in effect at the time the Debtors' plan was filed, then the Court would not consider the VW objection to that plan. However, this local rule was part of the revised local rules which did not take effect until April 1. Since the plan was filed prior to the effective date of the rule that characterizes this objection as untimely, and the prior local rules permitted objections to filed up to the time of the confirmation hearing, the Debtors' opposition to VW's objection, on procedural grounds, is overruled.

Turning to the merits, the issue the parties raise is the proper interpretation of new § 506(a)(2)) which was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and directs the following approach to the determination of a creditor's secured status:

> (b) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition with out deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean **the price a retail merchant would charge for property of that kind, considering the age and condition of the property at the time value is determined.**

11 U.S.C. § 506(a)(2) (2008). The local rule in this District (which was not changed under the 2008 revision of the local rules) provides

> **(b) Rebuttable Presumption of Valuation of Motor Vehicles**. As a starting point, the valuation of motor vehicle collateral shall be presumed to be the midpoint between the National Automobile Dealers Association ("NADA") wholesale value and the NADA retail value unless: (1) the parties agree to a different value; (2) the debtor or secured creditor presents an appraisal undisputed by the other party; or (3) the value is fixed by the Court as a result of an evidentiary hearing held specifically to determine the value of the particular vehicle.

Vt. LBR 3012-1(b). VW asserts that "[this] local rule appears to conflict with [§506(a)(2)]." Doc. 11, p. 2. Indeed, there may be an appearance of inconsistency between this local rule and § 506(a)(2) based upon the fact that the local rule appears to allow debtors to apply the midpoint value between retail and wholesale whereas the post-BAPCPA version of § 506(a)(2) speaks only of "the price a retail merchant would charge." However it is the Court's position that "the price a retail merchant would charge" is not necessarily equivalent to "the retail value."

The Court has found, and the parties have identified, no case decided within this Circuit that addresses the question of valuation of vehicle collateral in chapter 13, under the post-BAPCPA version of § 506(a)(2). However, there is very thorough case law that has developed in other circuits upon which this Court relies. In particular, the Court finds the Tenth Circuit Bankruptcy Appellate Panel decision in In re De Anda-Ramirez, 359 B.R. 794 (10th Cir BAP, 2007), to be the particularly persuasive. In that case, as here, the Debtors were claiming that the Kelly Blue Book ("KBB") value for private party value was the

2

most appropriate indicator of value for purposes of valuing their vehicle collateral under § 506(a)(2), and the creditor was claiming that the new language in § 506(a)(2) mandated use of the KBB retail value. The BAP analyzed the issue by parsing the meaning of the new, otherwise undefined, terms in § 506(a)(2):

> Under the BAPCPA revisions, the bankruptcy court now is charged with determining the "price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2). In its argument, both in its objection to confirmation and in the instant appeal, Midwest attempts to equate the required merchant retail value of section 506(a)(2) with the KBB retail value.

359 B.R. at 796. As the De Anda-Ramirez court points out "Suggested Retail Value" is a defined term in the KBB and "assumes that the vehicle has received the cosmetic and/or mechanical reconditioning needed to qualify it as "Excellent." In turn, KBB defines "excellent" to denote a vehicle looks new, is in excellent mechanical condition and needs no reconditioning. Specifically, a vehicle in "excellent condition" per KBB (i) has never had any paint or body work and is free of rust; (ii) has a clean title history and will pass a smog and safety inspection; (iii) has an engine compartment that is clean, with no fluid leaks and is free of any wear or visible defects; and (iv) has complete and verifiable service records. According to KBB, less than 5% of all used vehicles fall into this category. Continuing the rationale articulated by De Anda-Ramirez, we note that "Private Party Value," is defined by KBB as "what a buyer can expect to pay when buying a used car from a private party." The Private Party Value (i) assumes the vehicle is sold 'As Is'; (ii) carries no warranty (other than the continuing factory warranty), (iii) may vary depending on the vehicle's actual condition and local market conditions,; (iv) may be used to derive fair market value for insurance and vehicle donation purposes; and (v) represents something more akin to "good condition" rather than excellent. Id. at 797.   After laying out the critical definitions in the valuation guides used by the parties, the De Anda-Ramirez court observes:

> Other than both containing the word "retail," the Code and KBB definitions have little in common. The Bankruptcy Code's definition of "retail" includes an adjustment for the age and condition of the vehicle; KBB defines "retail" as the price for a vehicle that is in "excellent condition" with the proviso that less than 5% of vehicles for sale qualify as "excellent." Clearly, these two are not equivalent and Midwest's reliance on the KBB retail value is misplaced.

Critical to this Court's analysis is the statement from the BAP as to what it is not deciding; in footnote three the Court addresses the applicability of retail value in valuing vehicle collateral under § 506(b):

> The Court is not making a determination of the proper valuation procedure under revised Bankruptcy Code § 506(a)(2). It is clear that the KBB retail value was not appropriate in this case but that does not mean that it is never appropriate.

3

<u>Id</u>. at 797. Like the Tenth Circuit BAP this Court finds that the salient language in § 506(a)(2) is the qualifier "considering the age and condition of the property." If the vehicle in question were in excellent condition then the KBB or NADA retail value might well be the appropriate measure for valuation.

The Court has also taken into account the decision in <u>In re Morales</u>, 2008 WL 1990369, (Bankr.C.D.Cal. May 2008) and the excellent survey of cases it sets forth regarding interpretation of the new § 506(a)(2) valuation formula.

> In other circuits, courts interpreting the second sentence of § 506(a)(2) have adopted a variety of methods for calculating retail value. This case law, although still developing, offers at least some further insight on valuation under § 506(a)(2) <u>See</u> . . . .<u>In re Clark</u>, No. 06-31965, 2007 WL 671346 (Bankr.N.D.Ohio Feb. 27, 2007) (calculating retail value of car as the midpoint between two proffered retail values); <u>In re Kidwell</u>, No. 06-14087, 2007 WL 2934866, at *5 (Bankr.E.D.Tenn. Oct. 4, 2007) (calculating retail value of car based on Kelley Blue Book private party value based on appraiser testimony that private party value approximates retail price if paid in cash in full); <u>In re Ortiz</u>, No. 06-16243-BKC-RBR, 2007 WL 1176019, at *2-3 (Bankr.S.D.Fla.Fed.27, 2007) (calculating retail value of car by deducting the hypothetical cost of repairs from the retail value established by expert testimony); <u>In re Brown,</u> No. 06-00197-JW, 2006 WL 3692609, at *3 (Bankr.D.S.C. April 24, 2006) (calculating retail value of car in reliance on appraiser's report submitted by creditor); <u>In re Eddins,</u> 355 B.R. 849, 852 (Bankr.W.D.Okla.2006) (calculating retail value of car by reducing N.A.D.A. Guide retail value by appropriate amount based on any evidence submitted by parties in interest); <u>In re Mayland</u>, No. 06-10283, 2006 WL 1476927, at *3 (Bankr.M.D.N.C. May 26, 2006) (calculating retail value of car as 90% of N.A.D.A. Guide retail value, less cost of necessary repairs); see also <u>In re Finnegan</u>, 358 B.R. 644, 650 (Bankr.M.D.Pa.2006) (discussing valuation under § 506(a)(2) generally but concluding that the vehicle at issue was not acquired for personal, family, or household use, and thus valuing the vehicle under the first sentence instead of the second sentence). These cases present a range of different, though often similar, approaches to valuation. In general, however, these cases suggest that the emergent approach to valuation under § 506(a)(2) requires bankruptcy courts to reduce the N.A.D.A. Guide retail value, or other appropriate retail value, by an amount appropriate in light of evidence concerning the vehicle's condition.

2008 WL 1990369 at p. 5. Based upon the cases decided to date, it appears that a consensus is developing that it is the condition of the car that determines whether what KBB and NADA designate as "retail value" or " private party value" or some other value be used and that the critical starting point is "the age and condition" of the vehicle.

In the instant case the Debtors have not offered any testimony or admissible evidence as to the condition of the vehicle and have indicated their position that the Collateral is in "good" condition only by checking the box next to the classification of "good" in the condition column on the page of the NADA valuation they filed (doc. # 12, exh B). This hardly constitutes a description of the condition of the Collateral. Moreover, it appears from the papers that VW has not had an opportunity to view the Collateral to assess its condition at all. The burden in proving the condition of the vehicle rests with the debtor

because the debtor has the best access to information about the condition of the vehicle. Id. at 8; see also In re Coleman, 373 B.R. at 913. Hence, the Court will direct the Debtors to produce testimony or admissible evidence as to the condition of the Collateral before or at the status hearing set for May 15, 2008.

Based upon the conclusions reached herein, the Court does not feel compelled to revoke the local rule which permits parties to use, as a starting point for vehicle valuation, the midpoint between the NADA wholesale value and the NADA retail value. That rule that was instituted for procedural convenience and creates only a rebuttable presumption. The record before the Court does not support a finding that this rule is *de facto* inconsistent with the mandates of § 506(a)(2). Additionally, the parties did not brief that issue (the only reference to it was a passing inquiry from VW in its memorandum of law). Accordingly, the Court will leave to another day the question of whether the post-BAPCPA process for valuing collateral under § 506(a)(2) requires us to revoke or revise that local rule.

For these reasons, IT IS HEREBY ORDERED that

1. the VW objection is not untimely or procedurally defective;

2. the determination of whether to use the private party value or the retail value (in the KBB or NADA books) will be determined by whether the Collateral is in "good" or "excellent" condition, as those terms are defined in the respective applicable valuation guide;

3. the Debtors may introduce evidence of the condition of the Collateral before or at the hearing set for May 15, 2008 (or such other later date the parties and case Trustee agree to);

4. if the Debtors fail to timely produce evidence of the condition of the Collateral, the Debtors will be required to give access to the Collateral to VW so that it may produce evidence of the condition of the Collateral.; and

5. since there is no dispute as to the appropriate interest rate, the Debtors shall pay interest at 6.5% on the allowed secured claim and the allowed secured claim shall be equal to the value of the vehicle as determined by the procedure enunciated in this Order.

SO ORDERED.

May 13, 2008  
Rutland, Vermont

Colleen A. Brown  
U.S. Bankruptcy Judge